UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN PAUL DOTHARD,

                    Petitioner,                    Case No. 1:11-cv-753

v.                                                 Honorable Robert J. Jonker

MARY BERGHUIS,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving concurrent terms of 20 to 40 years, imposed by the Ingham County Circuit Court on August 6, 2008, after a jury convicted Petitioner of one count of unarmed robbery, MICH. COMP. LAWS § 750.530, and one count of armed robbery, MICH. COMP. LAWS § 750.529. Petitioner was sentenced as an habitual offender, MICH. COMP. LAWS § 769.12.  In his *pro se* second amended petition (ECF No. 18) Petitioner raises six grounds for relief.  Petitioner's issues are stated most clearly in his response (ECF No. 37) to the answer to the second amended petition:

1.    STATE TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS WHEN IT FAILED TO REFER HIM TO THE FORENSIC CENTER FOR A COMPETENCY HEARING.

2.    THE TRIAL COURT DID NOT OBTAIN A PROPER WAIVER OF PETITIONER'S RIGHT TO COUNSEL WHEN IT FORCED HIM TO REPRESENT HIMSELF.

3.    THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.

4.      PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT A CRITICAL STAGE.  TRIAL COUNSEL SHOWED CONFLICT OF INTEREST, FAILED TO INVESTIGATE, HAD NOT DEVELOPED A TRIAL STRATEGY, AND WAS NOT PREPARED FOR TRIAL.

5.      THE PROSECUTOR ENGAGED IN PREJUDICIAL MISCONDUCT. PROSECUTOR CREATED FALSE TESTIMONY CHANGING FACTS OF CASE.  THE PROSECUTOR SOLICITED AND ARGUED FALSE TESTIMONY AND INTRODUCTION OF FALSE EVIDENCE KNOWN TO BE FALSE TO THE PROSECUTOR.  THE PROSECUTOR DENIED THE PETITIONER THE RIGHT TO PRESENT HIS DEFENSE AND SUBJECT THE PROSECUTION'S CASE TO ADVERSARIAL TESTING WHEN REPEATEDLY INTERRUPTING, OBJECTING, AND COMMENTS.  THE PROSECUTOR VOUCHED FOR HIS WITNESSES DESPITE THE PHYSICAL AND SCIENTIFIC EVIDENCE SHOWING HIS WITNESSES WERE DELIBERATELY PERJURING THEMSELVES ON THE WITNESS STAND.

6.      THE TRIAL JUDGE ENGAGED IN MISCONDUCT AND WAS IMPROPERLY IMPARTIAL [SIC] TO THE PROSECUTION'S CASE. THE TRIAL JUDGE OPENLY DENIED THE PETITIONER THE RIGHT TO PRESENT HIS DEFENSE AND SUBJECT THE PROSECUTION'S CASE TO ADVERSARIAL TESTING WHEN IT REPEATEDLY INTERRUPTED, OBJECTED AND COMMENTED ON THE PETITIONER'S ATTEMPTS AT CROSS-EXAMINATION, OPENING STATEMENT, AND CLOSING ARGUMENTS.  THE TRIAL JUDGE'S MISCONDUCT WAS NOT THAT EXPECTED OF WHAT ORDINARY PEOPLE DO.  THE TRIAL JUDGE SUPPORTED THE FALSE TESTIMONY AND EVIDENCE OF THE PROSECUTOR'S CASE. MAKING PREJUDICIAL RULINGS, OFTEN OBJECTING HIMSELF. THE TRIAL JUDGE BELITTLED AND DEGRADED THE PETITIONER REPEATEDLY.  THE TRIAL JUDGE EVEN AT ONE POINT TOLD THE PROSECUTOR "WHEN HE ASKS QUESTIONS, YOU ARE TO OBJECT. I'M TIRED OF DOING THIS BY MYSELF." THESE THINGS WERE DONE IN FRONT OF THE JURY AND THE PETITIONER WAS DENIED THE FAIR TRIAL GUARANTEED HIM BY CLEARLY SUPREME COURT LAW AND THE U.S. CONSTITUTION.

(ECF No. 37, PageID.1373-74.)  Respondent has filed an answer to the petition (ECF No. 27) and

submitted the state-court record (ECF No. 28) as required under Rule 5, RULES GOVERNING §2254

CASES.  Upon review of the pleadings and the record, the Court will deny the petition for failure to raise a meritorious federal claim.

**Procedural History**

### A.      Trial Court Proceedings

On November 15, 2007, at around 8:00 p.m., Petitioner walked into the Rite Aid pharmacy at 5032 South Cedar Street in Lansing.  (TTII V1, ECF No. 28-9, PageID.726.)[1]  Firmesk Silevany was working as a loss prevention officer at the Rite Aid that night.  (*Id.* at PageID.725-26.) She had trained for a month, but that night Ms. Silevany was working solo and Ms. Reyes, her trainer and supervisor, observed from more of a distance.  (*Id.*)  Ms. Silevany watched Petitioner stuff his pockets with deodorants.  (*Id.* at PageID.728.)  Ms. Silevany contacted Ms. Reyes.  (*Id.* at PageID.727-28.)  They both observed Petitioner; Ms. Silevany contacted the police, Ms. Reyes confronted Petitioner.  (*Id.* at PageID.728-29.)

Upon being confronted, Petitioner headed to the front door to grab some bags he had dropped off when he entered the store.  (*Id.* at PageID.729.)  He picked up his bags and started to leave the store.  (*Id.* at PageID.729-30.)  As he passed the cash registers and approached the doors,

---

[1]The Rule 5 materials submitted by Respondent include several transcripts that shall be referenced herein as follows:

|  |  |
|---|---|
| December 7, 2007 Preliminary Examination Hearing | (PE, ECF No. 28-2, p. __) |
| March 24, 2008 Hearing Transcript | (HT, ECF No. 28-3, p. __) |
| May 27, 2008 Trial Transcript I (Volume 1) | (TTI V1, ECF No. 28-4, p. __) |
| May 29, 2008 Trial Transcript I (Volume 2) | (TTI V2, ECF No. 28-7, p. __) |
| May 30, 2008 Trial Transcript I (Volume 3) | (TTI V3, ECF No. 28-8, p. __) |
| July 7, 2008 Trial Transcript II (Volume 1) | (TTII V1, ECF No. 28-9, p. __) |
| July 8, 2008 Trial Transcript II (Volume 2) | (TTII V2, ECF No. 28-10, p. __) |
| July 10, 2008 Trial Transcript II (Volume 3) | (TTII V3, ECF No. 28-11, p. __) |
| August 6, 2008 Sentencing Transcript | (ST, ECF No. 28-12, p. __) |

Ms. Reyes and Ms. Silevany informed Petitioner that he still had Rite Aid merchandise that he had not paid for. (*Id*. at PageID.730-31.)

Petitioner headed out of the building. Ms. Silevany could tell he still had merchandise because his pockets were still bulging. (*Id*.) Ms. Silevany tried to stop Petitioner from leaving. (*Id*.) He pushed her out of the way and even hit her. (*Id*. at PageID.731.) Petitioner punched Ms. Reyes as well. (Id. at PageID.732.) Petitioner tripped and fell; he dropped his bag. (*Id*. at PageID.732-33.) Ms. Silevany attempted to help him up. (*Id*.) He threatened to kill her. (*Id*.)

Ms. Silevany continued her attempt to detain Petitioner until the police arrived. (*Id*. at PageID.733-34.) Petitioner continued to push her forward, eventually into the street. (*Id*.) Petitioner dropped the backpack, but continued down Cedar Street. (*Id*. at PageID.734.) Petitioner also left his coat; it had come off during the scuffle. (*Id*. at PageID.735.)

Ms. Reyes confirmed that she had observed Petitioner stuffing his clothing with deodorant cans. (TTII V2, ECF No. 28-10, PageID.757-58.) As she approached and questioned him, Petitioner started returning some of the items to the shelf. (*Id*. at PageID.759.) Petitioner headed toward the front exit. (*Id*. at PageID.759-60.) On the way out, he gave back one can of Axe deodorant spray. (*Id*.) Ms. Reyes confirmed the punching and pushing that Ms. Silevany had described. (*Id*. at PageID.761-62.) She saw Petitioner pull a knife from his pocket. (*Id*. at PageID.762.) She believed he was going to stab Ms. Silevany, so she grabbed him. (*Id*.) As he quickly turned, Petitioner threatened to kill Ms. Reyes and stabbed her in the side with a pocketknife. (*Id*. at PageID.763.) Ms. Reyes believed that the knife blade was not fully extended. (*Id*. at PageID.763, 778.) After Petitioner fled, Ms. Reyes retrieved the duffle bag, backpack, and coat he had left in the parking lot. (*Id*. at PageID.764-65.) The part of the incident that occurred in the store

- 4 -

was captured on surveillance video; Ms. Reyes narrated that video as it played for the jury.  (*Id*. at PageID.765-66.)

The Lansing Police arrived shortly after Petitioner had fled.  Officer Brian Rendon and his canine partner, Recon, tracked Petitioner.  (*Id*. at PageID.780-82.)  Recon located Petitioner quickly in a clump of trees near the Family Independence Agency not far from the Rite Aid pharmacy.  (*Id*.)  Petitioner was placed under arrest.  (*Id*. at PageID.785.)  Officer Brian Whitsitt located a knife and a gold watch under the pine trees where Recon found Petitioner.  (TTII V1, ECF No. 28-9, PageID.749.)  Officer Kristi Pratl went through the bags Petitioner had left behind.  (TT II V2, ECF No. 28-10, PageID.787.)  She found items that had been taken from Rite Aid as well as items taken from the Walgreen's pharmacy across the street.  (*Id*.)

Ms. Reyes and Ms. Silevany testified at Petitioner's preliminary examination on December 7, 2007.  (PE, ECF No. 28-2.)  Petitioner was represented by Attorney Raymond Reynolds.  (*Id*.)  Petitioner was bound over to the circuit court on charges of armed and unarmed robbery.  (*Id*. at PageID.95.)

Trial was initially set for February 25, 2008.  (ECF No. 28-1, PageID.447.)  It was adjourned to March 24, 2008.  (*Id*.)  Before that date, however, Attorney Reynolds moved to withdraw as counsel and for the circuit court to refer Petitioner to the forensic center to assess his competency.  (HT, ECF No. 28-3, PageID.499.)  The court denied the motion to refer Petitioner to the forensic center.  The court noted its suspicion that Petitioner's dissatisfaction with his attorney and any suggestion that he was not competent was simply a ploy to foster delay.  Petitioner adamantly denied that he was incompetent.  The court granted the motion to withdraw, appointed new counsel, Attorney Todd Robinson, and rescheduled the trial for May 27, 2008.

Petitioner became dissatisfied with Attorney Robinson shortly before the scheduled trial date.  On the day scheduled for trial, Attorney Robinson raised the issue with the court.  (TTI V1, ECF No. 28-4, PageId.505-07.)  The court, unwilling to accept further delay, granted Petitioner's request to represent himself and instructed Attorney Robinson to continue on as standby counsel.  (*Id.*)  The trial resulted in a hung jury.  (TTI V3, ECF No. 28-8, PageID.704.)  The court declared a mistrial and scheduled the matter for a new trial.  (*Id.*)

The second trial commenced on July 7, 2008.  (TTII V1, ECF No. 28-9.)  The prosecution moved the court to order Attorney Robinson, still appearing in a standby capacity, to appear as Petitioner's appointed counsel instead of permitting Petitioner to represent himself.  (*Id.* at PageID.707.)  Attorney Robinson, on Petitioner's behalf and with Petitioner's blessing, argued that Petitioner wanted to represent himself, had proven his ability to do so in the first trial, and had committed to avoid practices that had been problematic in the first trial.  (*Id.* at PageID.707-08.)

The trial proceeded and evidence was introduced as outlined above.[2]  The jury began deliberations on July 10, 2008, at about 11:30 a.m.  (TTII V3, ECF No. 28-11, PageID.817.)  After deliberating for a couple of hours, they posed a question: "If we find all four elements are present for armed robbery, <u>must</u> we find him guilty of armed robbery?"  (*Id.*)  In response, the court instructed them: "I have told you what the law of this case is.  However, a jury is free–or I should say a jury is free to act as it chooses."  (*Id.*)  Three hours later, the jury returned a verdict of guilty on both counts.  (*Id.* at PageID.819.)  On August 6, 2008, Petitioner was sentenced as outlined above.  (ST, ECF No. 28-12.)

---

[2]The evidence that was introduced at both trials was virtually the same; however, the record citations in the factual statement above are all taken from the second trial, the trial that resulted in Petitioner's convictions.

## B.    Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals.  The brief filed by counsel, raised, arguably, three issues: "[1] The Court erred in not remanding defendant to the Center for Forensic Psychiatry . . . [; 2] No valid waiver of the right to counsel occurred. . . . [; and 3] Standby defense counsel was constitutionally ineffective when he supported defendant's request to represent himself."[3] (See Def.-Appellant's Br. on Appeal, ECF No. 28-17, PageID.887.)  Petitioner filed a supplemental brief (ECF No. 28-17, PageID.937-96) raising the following additional issues:

1.    The trial court deprived Petitioner of his Sixth Amendment right to counsel.

2.    The trial court erred in denying the motion for a directed verdict or there was insufficient evidence to convict.

3.    The trial court improperly instructed the jury.

4.    Counsel provided ineffective assistance.

5.    Judicial misconduct–the trial judge was biased against Petitioner.

6.    The prosecutor knowingly introduced and argued false testimony.

7.    Petitioner's jury was not a fair cross section of the community because it systematically excluded African Americans.

(*Id*. at PageID.938-39.)  By unpublished opinion issued on February 9, 2010, the Michigan Court of Appeals rejected Petitioner's arguments and affirmed Petitioner's convictions and sentences. (Mich. Ct. of Appeals Op. ("MCAO"), ECF No. 28-17.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court.  Petitioner raised all of the claims raised before and rejected by the Michigan Court of Appeals except issue 3, regarding improper instructions, and issue 7, regarding the jury pool.  (Pro

---

[3]The brief purports to state only one issue, but presents three distinct arguments.  (ECF No. 28-17.)

Per Appl. for Leave to Appeal, ECF No. 28-18.)  By order entered July 26, 2010, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (Mich. Sup. Ct. Ord., ECF Nos. 28-18.)

### C.    Post-conviction relief

On December 29, 2011, Petitioner filed a motion for relief from judgment in the Ingham County Circuit Court raising three claims of error: (1) the court abused its discretion in not referring Petitioner to the Forensic Center; (2) improper waiver of counsel and ineffective assistance of counsel; and (3) insufficient evidence to convict.  (Pet'r's Mot. for Relief from J., ECF No. 28-13, PageID.827.)  These are all issues he had raised on direct appeal.  Petitioner's motion was denied for that reason: he had raised each of the issues on direct appeal and the court of appeals had addressed and rejected them.  (Ord., ECF No. 28-14, PageID846.)  Petitioner sought and was denied reconsideration.  (ECF Nos. 28-14, 28-15.)  Petitioner sought leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court.  Both courts denied leave to appeal under M.C.R. 6.508(D), on December 14, 2012 and July 30, 2013, respectively.  (*See* Mich. Ct. App. Ord., ECF No. 28-19; Mich. Ord. ECF No. 28-20.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

   The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

   A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas

petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).  Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

#### A.     Petitioner's competence

A criminal defendant who is incompetent may not be tried.  *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Drope v. Missouri*, 420 U.S. 162, 171 (1975).  The test for a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 411 (1960);

*see also Godinez*, 509 U.S. at 396; *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004)

(quoting *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). A court's failure to hold a proper

hearing where substantial evidence exists of the defendant's incompetency violates the defendant's

due process right to a fair trial. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). "[T]he

standard . . . for requiring competency hearings prior to trial or the entry of a guilty plea is not merely

whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether

evidence raises a 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529,

533 (6th Cir. 2004). In reaching its determination regarding competency, a court should consider

evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion

concerning his competence. *Mackey*, 217 F.3d at 411.

       With regard to this issue, the Michigan Court of Appeals stated:

> Absent evidence that raises a bona fide doubt as to a criminal defendant's competence, the defendant is presumed competent to stand trial. MCL 330.2020(1); *[People v.] Harris*, 185 Mich.App. at 102, 460 N.W.2d 239. Criminal proceedings may not proceed against an incompetent defendant. MCL 330.2022(1). "The issue of a defendant's competence to stand trial may be raised by either party or the court." *Harris*, 185 Mich.App. at 102, 460 N.W.2d 239; see also MCL 330.2024. "Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination...." MCL 330.2026(1).

> The record reflects that while defendant's first-appointed trial counsel filed a motion requesting that defendant be referred to the forensic center for evaluation, defendant vehemently denied that he suffered from a mental illness and argued that he should not be referred to the forensic center. As such, defendant waived this issue for appeal. *People v. Carter*, 462 Mich. 206, 215–216, 612 N.W.2d 144 (2000). But even if defendant had not waived this issue, based on our review of the record, we find that the trial court was not presented with any evidence that raised a bona fide doubt as to defendant's competency to stand trial. Moreover, contrary to defendant's argument, defendant did not exhibit any signs that he suffered from a mental illness.

- 11 -

(Mich. Ct. of Appeals Op., ECF No. 28-17, PageID.873-74.)   The Michigan Court of Appeals'
resolution reasonably applied the standard called for by clearly established federal law.   There was
simply no record evidence to support Petitioner's referral to the forensic center. Indeed, it would be
virtually impossible to conclude that Petitioner did not enjoy a reasonable degree of rational
understanding of the proceedings where Petitioner represented himself sufficiently to "hang" the
jury, despite video evidence of the larceny, eyewitness testimony regarding the use of a knife, and
the presence of the knife where the police found Petitioner.

### B.      Waiver of right to counsel

Petitioner contends that the trial court should not have permitted him to represent
himself.   Petitioner principally complains that the trial court failed to comply with MICH. CT. R.
6.005 regarding the initial waiver of counsel and waiver at subsequent proceedings.   The court of
appeals determined that the trial court had substantially complied with the rule and that state law
requires nothing more.   (MCAO, ECF No. 28-17, PageID.873-75) ("A trial court's failure to comply
with each of these requirements will not render an otherwise valid waiver invalid, as long as the
court has substantially complied. . . . We similarly conclude that the trial court substantially
complied with MCR 6.005(D).")

Petitioner's claim that the court's consideration of his waiver of counsel did not meet
the requirements of MICH. CT. R. 6.005 is not cognizable on habeas review.   "[A] federal court may
issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States.'"   *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)
(quoting 28 U.S.C. § 2254(a)).   A habeas petition must "state facts that point to a 'real possibility
of constitutional error.'"   *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory

Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  As a consequence, any habeas claim based on violation of MICH. CT. R.  6.005 is without merit.

Although violation of a state court rule does not establish a habeas claim, there may still be constitutional issues with regard to the court's acceptance of Petitioner's request for self-representation.  The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense.  U.S. Const. amend. VI.  At issue here is a corollary to that right, the right to self-representation.  *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) ("The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms.").  The clearly established federal law regarding self-representation is expressed in two Supreme Court cases: *Faretta v. California,* 422 U.S. 806 (1975), and *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the structure of the Sixth Amendment right to the assistance of counsel:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

- 13 -

The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-821 (footnotes and citations omitted). Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one. The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. Because a criminal defendant representing himself relinquishes that benefit, his waiver must be "'knowingly and intelligently'" made. *Id.* at 835. Moreover, the right to self-representation must yield to "'the dignity of the courtroom.'" *Id.* at 834, n. 46. It is not a license to ignore the rules of procedure or engage in "obstructionist misconduct." *Id.*

In *Martinez*, 528 U.S. 152, the Supreme Court concluded that the right of self-representation did not extend to appeals. In reaching its conclusion, the Supreme Court commented on the scope of the right of self-representation established in *Faretta*, stating:

As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his

own defense, and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation." A trial judge may also terminate self-representation or appoint "standby counsel"- even over the defendant's objection - if necessary. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

Neither the trial court nor the state appellate court referenced *Faretta* or *Martinez* in evaluating Petitioner's waiver of the right to counsel. Instead, the state courts relied on *People v. Anderson*, 247 N.W.2d 857 (Mich. 1976). In *Anderson* the Michigan Supreme Court established three requirements that must be met before a criminal defendant in Michigan can proceed *pro se:*

First, the request must be unequivocal . . . . Second, once the defendant has unequivocally declared his desire to proceed Pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . . . The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business.

*Anderson,* 247 N.W.2d at 859-860.[4] The Michigan Supreme Court drew the requirements directly from the circumstances that swayed the *Faretta* Court to recognize the right of self-representation. *Id.* at 859 ("[T]he [*Faretta*] Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense. The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate,

---

[4]In moving to compel Petitioner to accept representation, the prosecutor did not suggest that Petitioner's self-representation request was equivocal or that it was anything other than knowing, intelligent, and voluntary. The prosecutor claimed only that Petitioner would disrupt the proceedings.

competent, and understanding individual.") Thus, considering Petitioner's request for self-representation under *Anderson* is consistent with and not contrary to clearly established federal law.

Here, the trial court considered and ruled on Petitioner's request for the first time on May 27, 2008, the first day scheduled for trial. Petitioner raised his dissatisfaction with Attorney Robinson. The court informed Petitioner that Mr. Robinson was the appointed attorney but that Petitioner could represent himself. The court cautioned Petitioner about representing himself, and then asked: "So you want to represent yourself?" (*Id.* at PageID.506.) Petitioner replied: "Yes I do." (*Id.*) Mr. Robinson remained as standby counsel.

The issue came up again on the first day of the second trial. It was not brought up by Petitioner; the prosecutor asked the court to require Petitioner to proceed with Attorney Robinson's representation. (TTII V1, ECF No. 28-9, PageID.707.) Attorney Robinson, on behalf of Petitioner, reported that Petitioner wanted to continue to represent himself and that he had already proven himself in the earlier trial. (*Id.* at PageID.707-08.) The court agreed. (*Id.*)

The court of appeals found that there was no ambiguity in Petitioner's request to represent himself; thus, the trial court did not err when it determined Petitioner's request was unequivocal. (MCAO, ECF No. 28-17, PageID.875.) The court of appeals also found that the trial court informed Petitioner of the inherent risks of self-representation and that Petitioner was fully aware of the charges and the penalties he faced. (*Id.*) Clearly established federal law requires nothing more. As the Sixth Circuit stated in *Glass v. Pineda*, 635 F. App'x 207 (6th Cir. 2015):

> [T]he Supreme Court "ha[s] not ... prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."

> *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Indeed, the inquiry "is whether [petitioner's] waiver was knowing and voluntary," so we look to "what the defendant understood —not what the court said or understood." *Akins*, 648 F.3d at 398 (quoting *United States v. Erskine*, 355 F.3d 1161, 1169–70 (9th Cir. 2004)). And "the burden of proof rests upon [the defendant] to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel." *Johnson*, 304 U.S. at 468–69; *see also Akins*, 648 F.3d at 395.

*Glass*, 635 F. App'x at 214 (parallel citations omitted).  Moreover, in light of the state court of appeals' findings, Petitioner must meet his burden with clear and convincing evidence.  He has offered no such evidence here.  Accordingly, his habeas claim is without merit.

### C.    Insufficient evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401 02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both

the Jackson standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two

levels in this case:  First, deference should be given to the trier of fact's verdict, as contemplated by

*Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the

trier of fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a

nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence

grounds.  *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

> The Michigan Court of Appeals resolved Petitioner's sufficiency challenge as

follows:

> After reviewing the evidence in a light most favorable to the prosecution . . .
> we conclude that a rational trier of fact could have reasonably concluded beyond a
> reasonable doubt from the evidence adduced that defendant was guilty of unarmed
> and armed robbery.
>
> The elements of unarmed robbery are:  "(1) a felonious taking of property
> from another, (2) by force or violence or assault or putting in fear, and (3) being
> unarmed." . . .  The elements of armed robbery are:  "(1) an assault, and (2) a
> felonious taking of property from a victim's person or presence, and (3) the defendant
> is armed with a weapon described in the statute." . . .  Both victims testified that
> defendant concealed several items in his pockets without paying for them and
> attempted to the leave the store.  The victims testified that defendant resorted to
> violence when they tried to prevent him from leaving the premises with the property.
> There was also evidence that defendant had possessed a knife at the time.  The
> prosecution presented video and photographic evidence that corroborated the victims'
> testimony.  Any possible inconsistencies in the testimony went to the credibility of
> the witnesses and the weight and that should be afforded their testimony.  In deciding
> whether to grant defendant's motion for a directed verdict, the trial court properly left
> these matters to the trier of fact.

(MCAO, ECF No. 28-17, PageID.877 (citations omitted).)  The court of appeals' resolution is not

contrary to or an unreasonable application of clearly established federal law.  Petitioner does not

even make that claim.  Instead, Petitioner's argument with regard to sufficiency depends entirely on

his contention that the prosecution witnesses lied.  That sort of credibility determination is not cognizable on habeas review.

### D.    Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In resolving Petitioner's claim of ineffective assistance of counsel the Michigan Court of Appeals stated:

> Defendant argues that he is entitled to a new trial because he was deprived of the effective assistance of counsel.  Again, we find that defendant waived his right to counsel.  Therefore, he was not entitled to the effective assistance of counsel.  Nor

- 19 -

was he entitled to effective standby counsel. *People v Kevorkian*, 248 Mich App 373, 425-426; 639 NW2d 291 (2001). Defendant's argument in this regard must fail.

(MCAO, ECF No. 28-17, PageID.878.)   That determination is not contrary to or an unreasonable application of clearly established federal law.   In *Faretta*, 422 U.S. at 806, the Court stated: "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Id.* at 834.   The Sixth Circuit has recognized that "[t]o the extent [stand-by counsel] failed to act during trial, [the criminal defendant] merely suffered the consequences of this decision to proceed *pro se." Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008).   That is also true with respect to the affirmative acts undertaken by stand-by counsel where there is "hybrid representation." *Marcusse v. United States*, No. 1:09-cv-913, 2012 WL 5306258, at *21 (W.D. Mich. Oct. 26, 2012) (citing *Blanton v. Thaler*, No. 3:08-cv-1081-O, 2010 WL 5538408, at *3 (N.D.Tex. Dec.7, 2010) (holding that, where counsel and defendant split some of the responsibilities at trial, defendant nevertheless remained pro se and could not challenge standby counsel's effectiveness)).

Petitioner also contends that Attorneys Reynolds and Robinson were ineffective during the pretrial period when Petitioner was represented.   In support of that contention, Petitioner offers only conclusory statements of failure to investigate or prepare for trial.   There is nothing in the record to suggest that counsel were unprepared.[5]   Put simply, for the period of time before his first trial, while he was represented, Petitioner has failed to demonstrate that counsel's performance fell short or that Petitioner was prejudiced thereby.

---

[5]The heart of Petitioner's complaint appears to be that counsel did not investigate whether surveillance cameras at nearby businesses or the traffic light at the intersection of Jolly and Cedar might have contained exculpatory video of the fracas in the Rite Aid parking lot.   It is sheer speculation on Petitioner's part that such videos exist or that they are indeed exculpatory.   Moreover, Petitioner fails to explain why he took no steps to pursue the issue on his own between his first and second trial.

- 20 -

### E.     Prosecutorial misconduct and judicial bias

Petitioner claims that the prosecutor acted inappropriately by knowingly presenting false testimony and by making several arguments in closing that were not supported by the evidence. Petitioner claims that the trial court judge acted inappropriately by failing to treat Petitioner with respect.  Petitioner's procedural default precludes habeas review of both claims.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying Petitioner's prosecutorial misconduct and judicial bias claims.[6]  It is clear

---

[6]The court of appeals noted the Petitioner had failed to preserve either issue for appellate review; therefore, that court's review was limited to a "plain error" analysis.  (MCAO, ECF No. 28-17, PageID.878.)  In this circuit, "plain error review does not constitute a waiver of state procedural default rules."   *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also  Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)

that the contemporaneous objection rule was well-established at the time of Petitioner's trial.  *See,*

*e.g., People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985).  A rule designed to arm trial judges

with the information needed to rule reliably "serves a governmental interest of undoubted

legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002).  Petitioner's failure to comply with the state's

independent and adequate state procedural rule, i.e., making a contemporaneous objection, caused

him to default his claims in state court.  *See Wainwright v. Sykes*, 433 U.S. 72, 86 88 (1977); *Taylor*

*v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010).

   If a petitioner procedurally defaulted his federal claim in state court, the petitioner

must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual

prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal

habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547

U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The

miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts

a claim of actual innocence based upon new reliable evidence.  *Hous*e, 547 U.S. at 536. A habeas

petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is

more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

   To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner

must point to "some objective factor external to the defense" that prevented him from raising the

issue when appropriate.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

---

(claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

Petitioner does not offer cause for his procedural default, but the cause is apparent.  Petitioner was not sufficiently knowledgeable in the law to preserve appellate issues by making contemporaneous objections.  That is not sufficient.   *See Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) ("a petitioner's pro se status and ignorance of his rights do not constitute cause").   Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner also has not demonstrated that manifest injustice would result because he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).   This requires a showing "that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Coleman v. Mitchell,* 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329).   Accordingly, I conclude that Petitioner's prosecutorial misconduct and judicial bias claims are procedurally defaulted.

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C.  § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned

assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   ___August 23, 2016___        ___/s/ Robert J. Jonker_____
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE